UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 6: 04-70-DCR |
| | ) | Civil Action No. 6: 09-7082-DCR |
| V. | ) | |
| | ) | |
| RICKY JONES, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Petitioner. | ) | |

**         **         **         **

Petitioner Ricky Jones entered a guilty plea to possession of a firearm and ammunition by a convicted felon. Because Jones was found to have three prior violent felony convictions, he was sentenced pursuant to the Armed Career Criminal Act and received a term of imprisonment of 188 months. Jones did not file a direct appeal following the Court's imposition of his sentence on April 11, 2005. Instead, on July 10, 2009, he filed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Jones argues that, by virtue of a 2008 Supreme Court decision[1], he was improperly classified as an Armed Career Criminal at the time of sentencing. Thus, he contends that his sentence was incorrectly enhanced under 18 U.S.C. §924(e)(1).

In accordance with local practice, Jones *pro se* §2255 motion was referred to United States Magistrate Judge Robert E. Wier for issuance of a report and recommendation. Because

---

[1]     Jones relies on *Begay v. United States*, 553 U.S. 137 (2008) (holding that a New Mexico state conviction for driving under the influence of alcohol was not a violent felony within the meaning of the Armed Career Criminal Act).

-1-

Jones filed his § 2255 motion more than four years after his conviction became final, Magistrate Judge Wier directed Jones to demonstrate why his motion should not be dismissed as untimely. [Record No. 36]   Jones responded on August 31, 2009, asserting equitable tolling.   On November 19, 2009, the Magistrate Judge issued his opinion, recommending that Jones' § 2255 motion be dismissed as time-barred. [Record No. 39]

Jones filed timely objections to the Magistrate Judge's Recommended Disposition. [Record No. 42]  The Court has reviewed Jones' objections and finds that they do not support his claim of equitable tolling.  However, because the Court also concludes that *Begay v. United States*, 553 U.S. 137 (2008) – the decision on which Jones relies for the relief sought – does not apply retroactively, the Court will dismiss Jones' petition on this alternative ground as well. Additionally, the Court finds that  Jones' 1999 conviction constitutes a crime of violence under 18 U.S.C. § 924(e).  Thus, his argument to the contrary is incorrect.

## I.

On January 24, 2004, Jones was observed in Leslie County, Kentucky, brandishing and discharging a firearm.  Following complaints to the Kentucky State Police (KSP), a KSP trooper located Jones on Kentucky highway 1482 driving a pick-up truck with expired tags and emergency lights flashing.  The trooper conducted a traffic stop of the vehicle and obtained consent to search its contents.  The search revealed a loaded Rossi .38 caliber revolver in the truck's console.  Both Jones and his passenger were arrested for alcohol-related offenses.

On August 26, 2004, a federal criminal complaint was issued, charging Jones with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[2] Jones was subsequently indicted by a federal grand jury and charged with substantive violations of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).[3] Jones was arraigned on September 28, 2004, and advised of the potential penalties if convicted of the charge contained in Court 1 of the indictment. As outlined in the penalty page attached to the indictment, if Jones was found to be an Armed Career Criminal, he faced a term of imprisonment of not less than fifteen years imprisonment, a fine of not more than $250,000, and a term of not more than five years of supervised release following his period of incarceration. [Record No. 9]

On October 19, 2004, the United States filed a Notice specifying Jones as an Armed Career Criminal within the meaning of 18 U.S.C. § 924(e) and United States Sentencing Guideline Manual § 4B1.4(a). [Record No. 14] The notice identified the following prior convictions:

1.    An eight year sentence of imprisonment imposed on June 17, 1982 following convictions in the Bell Circuit Court, Case No. 82-CR-51, for second degree escape;

2.    A ten year sentence of imprisonment imposed on November 14, 1991, following a conviction in the Clay Circuit Court, Case No. 90-CR-43, for second degree robbery; and

---

[2]    The criminal complaint outlined Jones' prior convictions as being: (1) theft of property with a value of more than $100 and 2nd degree escape in 1982 for which Jones received a combined sentence of 8 years imprisonment; (2) 2nd degree robbery in 1991 for which Jones received a sentence of 10 years imprisonment; (3) reckless homicide in 1999 for which Jones received a sentence of five years imprisonment.

[3]    Count 2 of the indictment asserted forfeiture of the .38 caliber Rossi revolver and ammunition pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461.

     3.      A five year sentence of imprisonment on September 1, 1999, following a conviction in the Leslie Circuit Court, Case No. 98-CR-09, for murder, operating a vehicle under the influence of drugs.[4]

Jones did not challenge the United States notice concerning the nature of his prior convictions or proceed to trial on the federal indictment. Instead, he sought and was permitted to enter a guilty plea to Count 1 of the Indictment. The written Plea Agreement tendered at the time of Jones' guilty plea on December 6, 2004, identified the elements of the substantive charge as well as the relevant facts supporting the guilty plea. Additionally, the Plea Agreement outlined the following potential penalties:

    4. The maximum statutory punishment is imprisonment for Court 1 as **an Armed Career Criminal pursuant to provisions of 18 U.S.C. § 924(e)(1)**, not less than 15 years imprisonment, not more than a $250,000 fine, and not more than 5 years supervised release. As to Count 2, forfeiture of all assets is required. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of entry of the plea.

[Record No. 27; Plea Agreement, ¶ 4] In addition to reviewing this provision with counsel, the Court specifically reviewed the maximum period of incarceration that Jones faced for entering a guilty plea to Count 1 of the indictment.

Jones sentencing hearing was held on April 11, 2005. Although the transcript of this hearing has not been filed, the minutes of the hearing indicate that Jones' counsel did not object to the Presentence Investigation Report (PSI) which classified Jones as an Armed Career

---

[4]     Under Kentucky law, a person may be convicted of murder when, with intent to cause the death of another person, he causes the death of a third person. A murder conviction may include the operation of a motor vehicle under circumstances manifesting extreme indifference to human life if the person wantonly engages in conduct which creates a grave risk of death to another person and thereby causes another person's death. *See* KRS 507.020. Reckless homicide, the charge identified in the criminal complaint, is a lesser offense. A person is guilty of reckless homicide when, with recklessness, he causes the death of another person. *See* KRS 507.050. Unlike a conviction for driving under the influence of drugs or alcohol, both crimes involve violent conduct.

-4-

Criminal as a result of his prior felony convictions.  [Record No. 25][5] Jones received a sentence

of imprisonment of 188 months to be followed by a term of supervised release of five years,

subject to a number of standard and special conditions imposed by the Court.  [Record No. 28]

Jones did not file a direct appeal of his sentence.  Thus, the Court's judgment became

final ten days following its entry on April 12, 2005.  On January 18, 2006, the clerk of the Court

filed a letter from Jones in which he requested a copy of the entire record.  [Record No. 30]

Although the Court denied this request in its entirety, the clerk was directed to provide Jones

with a copy of the docket sheet and notice of the per page copying charge for any materials

subsequently requested.  [Record No. 31]  By letter dated March 6, 2006, Jones requested

appointment of counsel to handle a post-conviction appeal.  [Record No. 33]  This request was

denied on March 13, 2006.  [Record No. 34]  Thus, it is clear that in early 2006, Jones was

seeking to challenge his sentence through collateral proceedings.

The Court did not receive any further communications from Jones following the denial

of his request for counsel to handle a post-conviction appeal until the filing of his § 2255 motion

on July 10, 2009.  As grounds for his motion, Jones gave the following explanation:

> **GROUND ONE**: Larry Begay, Petitioner v. United States 553 U.S. ___, 128
> S.Ct., ___ 170 L.Ed.2d 490, U.S. Lexis 3474 [No. 06-11543] 98-CR-09 Reckless
> Homicide is used to Perdicate this Armed Career Criminal Act  The perdicated
> offense used do not have the element of attempted use or threatened use of
> physical force against a person of another does not have any aggressive Intention

---

[5]      Jones' PSI provides further information regarding the 1999 conviction.  Paragraph 32 of his PSR
states that Jones was originally charged on July 28, 1999, with Murder, Driving Under the Influence,
Possession of a Controlled Substance, and 1st degree Persistent Felony Offender.  The charges arose from an
incident occurring December 30, 1997.  The PSR indicates that, on that date, Jones was driving a vehicle
involved in an accident in which a passenger, Glenna Hoskins, was killed.  Pursuant to a plea agreement,
Jones pleaded guilty to Reckless Homicide and was sentenced to five years incarceration on September 1,
1999.

> <u>The D.U.I. Reckless Homicide was an accident cause by bad weather and by me
> for driving under the influence I did not have any Intention of doing wrong that
> day</u>

[Record No. 35; § 2255 Motion to Vacate, ¶ 12]  Jones further asserted that he did not raise the

issue of whether his conviction for murder/operating a motor vehicle while under the influence

of drugs was a violent felony because *Begay* had not been decided at the time of his guilty plea.

[*Id*. at ¶ 13]

## II.

### A.    *Retroactive Application of Begay*

Under the doctrine of equitable tolling, Jones asserts that the Court should consider and

apply the holding in *Begay v. United States*, 553 U.S. 137 (2008), decided April 16, 2008, even

though he did not file his habeas proceeding until July 10, 2009.   The Magistrate Judge

addressed this issue and concluded that equitable tolling is inapplicable under the facts

presented.   However, unless the Supreme Court's decision in *Begay v. United States*, 553 U.S.

137 (2008), is applied retroactively to collateral appeals, the issue of whether equitable tolling

applies becomes moot.

In addressing retroactive application of a rule of criminal procedure, the Court finds

significant guidance in the Sixth Circuit's decision in *Humphress v. United States*, 398 U.S. F.3d

855 (6th Cir. 2005), holding that *United States v. Booker*, 543 U.S. 220 (2005), should not be

applied retroactively to collateral appeals.   In *Humphress*, the petitioner sought to set aside a

conviction for conspiracy to murder, arguing, in part, that his sentence violated *Booker* because

it was increased based on findings of fact made by the trial judge.   As the Sixth Circuit explained

in *Humphress*, federal habeas petitioners may not rely on new rules of criminal procedure[6] handed down after their convictions become final on direct appeal. *Schriro v. Summerlin*, 542 U.S. 348 (2004). However, this general rule is subject to narrow exceptions outlined by the Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989).

Under the three-step analysis announced in *Teague*, the court must first determine when the defendant's conviction became final. *Beard v. Banks*, 542 U.S. 406 (2004). Next, the court must decide whether the rule in question is actually "new." Only then is the court called upon to determine if either of the two exceptions to the general rule of nonretroactivity apply. In *Teague v. Lane*, 489 U.S. at 301, the Supreme Court held that a "new rule" is a rule that "breaks new ground." In other words, "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* And in making this determination, the court must "assay the legal landscape [as of the date the petitioner's conviction became final] and ask 'whether the rule later announced was *dictated* by then-existing precedent – whether, that is, the unlawfulness of the conviction was apparent to all reasonable jurists.'" *Beard v. Banks*, 542 U.S. at 413 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997). In concluding that the rule announced in *United States v. Booker, supra,* was a "new

---

[6]       Although there is a split of authority on the issue, this Court concludes that application of the Armed Career Criminal Act is a procedural rule. *See Schriro v. Summerlin*, 542 U.S. 348 (2004) (distinguishing between new substantive rules and new procedural rules). *Begay*, as applied to this case, is a rule of interpretation for determining the application of a sentencing enhancement under the federal sentencing guidelines. Rules for calculating a defendant's sentence are not substantive changes in the law which are retroactive. *United States v. Giggey*, 551 F.3d 27, 36 n. 3 (1st Cir. 2008).

         *Begay* is not a 'watershed' change in the law any more than was *United States v. Booker*, which has been held to be non-retroactive within the Sixth Circuit. Further, the holding in *Begay* has no bearing on the accuracy or fairness of the criminal process.

rule" of criminal procedure under *Beard*, the *Humphress* court held that *Booker's* holding "was not dictated by precedent existing at the time that Humphress' conviction became final, and it would not have been apparent to 'all reasonable jurists' that his conviction was unlawful." *Humphress, supra,* at 861.

Likewise, this Court concludes that the rule announced in *Begay v. United States*, 553 U.S. 137 (2007), is a "new rule" of criminal procedure. Its holding was not dictated by precedent existing at the time Jones' conviction became final in April 2005, and it was not apparent at that time that his prior felony convictions did not qualify as violent felonies under 18 U.S.C. § 924(e)(1). Justice Breyer delivered the majority opinion in *Begay*. Chief Justice Roberts, together with Justices Stevens, Kennedy and Ginsburg joined with Justice Breyer while Justice Scalia filed a separate opinion concurring in the judgment. A dissenting opinion was authored by Justice Alito, joined by Justices Souter and Thomas. Justice Alito's dissent makes a compelling argument for concluding that Petitioner Begay's felony DUI convictions qualified as violent felonies under § 924(e). As Justice Alito notes in his dissenting opinion, the majority's interpretation of the relevant portion of the statute in issue "cannot be squared [with its text] which simply does not provide that an offense must be 'purposeful,' 'violent,' or 'aggressive' in order to fall within the residual clause." Instead, to come within the residual clause of the statute and qualify as a violent felony, the conviction must simply "otherwise involve conduct that presents a serious potential risk of serious injury to another." *Begay* at ***38. And while the mere existence of a dissent does not necessarily establish that *reasonable* jurists differ regarding whether precedent compels the sought-for rule, it is clear that the

-8-

rationale outlined in Justice Alito's dissenting opinion evidences reasonable disagreement on the issue presented to the Court.

This Court also concludes that the new rule announced in *Begay* does not fit within either of the two exceptions outlined in *Teague v. Lane*, 489 U.S. 288 (1989). Only the second exception need be considered here.[7] As the *Beard* Court explained,

> [the second exception to the rule of nonretroactivity] is for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. We have repeatedly emphasized the limited scope of the second *Teague* exception, explaining that it is clearly meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty. And, because any qualifying rule would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception.

*Beard*, 124 S.Ct. at 2513-14 (internal quotations and citations omitted).

Citing *Schriro v. Summerlin*, 542 U.S. 348 (2004), the Sixth Circuit in *Humphress* held that the Supreme Court's decision in *Booker* does not fit with the second *Teague* exception to nonretroactivity. In *Schriro*, the Supreme Court held that *Ring v. Arizona*, 536 U.S. 584 (2002)[8], did not announce a "watershed rule" of criminal procedure that would apply retroactively to cases already final on direct review. The Court framed the issue as "whether judicial factfinding so *seriously* diminishes accuracy that there is an impermissibly large risk of punishing conduct

---

[7]     The first exception is inapplicable. It provides that the nonretroactivity rule does not apply to rules forbidding punishment "of certain primary conduct [or to] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Beard*, 124 S.Ct. 2513 (quoting *Perry v. Lynaugh*, 492 U.S. 302, 330 (1989)).

[8]     In *Ring v. Arizona*, the Supreme Court held that the provisions of Arizona's sentencing scheme that allowed a judge to find aggravating factors authorizing the death penalty violate the Sixth Amendment.

the law does not reach. *Id.* at 2525. And in this context, the Sixth Circuit had little difficulty concluding that the Supreme Court's holding in *Booker* does not fit within the second *Teague* exception. *See Humphress*, 398 F.3d at 863. The same reasoning applies to the issue presented here.

Other courts have also concluded that the Supreme Court's holding in *Begay v. United States*, 553 U.S. 137, should not be applied retroactively to collateral appeals. In *United States v. Holt*, 2009 U.S. Dist. LEXIS 115242 (W.D. Wisc., Dec. 10, 2009), the defendant, Jon Holt, was convicted by a jury on August 3, 2005, of conspiring to manufacture methamphetamine in violation of 21 U.S.C. § 846(a)(1). Holt was found to be a career offender based on a prior felony drug conviction and a conviction for vehicular flight from a police officer. On November 19, 2009, Holt sought modification of his sentence under 28 U.S.C. § 2255 based on the contention that he was improperly classified as a career offender because his conviction for fleeing from a police officer did not constitute a crime of violence under the Supreme Court subsequent decisions in *Begay v. United States*, 553 U.S. 137 (2008), and *Chambers v. United States*, 129 S.Ct. 687 (2009).

Although the court in *Holt* identified other weaknesses in the petitioner's argument, it denied the relief requested because neither *Begay* nor *Chambers* have retroactive effect. The court held that,

> Defendant must show not only that the Supreme Court has newly recognized the constitutional right he seeks to assert, but he must convince this court that the right is retroactively applicable to cases on collateral review. *Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001) (holding that courts of appeal and district courts may decide retroactivity question when determining whether § 2255

-10-

motion is timely).   Defendant has shown no reason why either *Begay* or *Chambers* have retroactive effect.

In *Teague v. Lane*, 489 U.S. 288, 310 (1989), the United States Supreme Court held that, with two exceptions, new constitutional rules of criminal procedure will not be applicable to cases that have become final before the rules are announced. The exceptions are limited to (1) new rules that prohibit criminal punishment for certain types of primary conduct and (2) those that amount to "watershed" rules of criminal procedure, that is, those "new procedures without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 313.

For defendant, the only effect of *Begay* and *Chambers* is on the calculation of his sentencing guidelines.   For that reason, neither of the *Teague* exceptions applies. The new rulings do not make substantive changes in the law or involve a "watershed" rule.   *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) (holding that decision in *United States v. Booker*, 543 U.S. 220 (2005), related only to calculation of sentencing guidelines and was not retroactive because it did not make any primary conduct lawful and did not fundamentally improve fairness and accuracy of criminal process).   *See also United States v. Giggey*, 551 F.3d 27, 36 n.3 (1st Cir. 2008) (noting that change in treatment of violent felony was not retroactive substantive change in law).

*Holt*, at *5-*6.   Thus, the Wisconsin district court concluded that the holdings in *Begay* and

*Chambers* are not retroactive and would not apply to Holt's case even if they addressed the

issues presented.

The Maine district court reached a similar result in *Cadieux v. United States*, 2009 U.S.

Dist. LEXIS 41532 (D. Maine, May 8, 2009).[9]  In *Cadieux*, the defendant received a 188-month

---

[9]     Other courts reaching a similar conclusion include *Sun Bear v. United States*, 2009 U.S. Dist. LEXIS 60188 (D. S.D., July 9, 2009) (*Begay* not retroactively applicable under *Teague v. Lane*, 489 U.S. 288 (1989)); *United States v. Johnson*, U.S. Dist. LEXIS 74946 (D. Minn., Aug. 24, 2009); *Lindsey v. United States*, 2009 U.S. Dist. LEXIS 65621 (W.D. Mo., July 29, 2009); *United States v. Campbell*, 2009 U.S. Dist. LEXIS 37542 (D.S.C., May 1, 2009); and *United States v. Narvaez*, 2009 U.S. Dist. LEXIS 44089 (W. D. Wis., May 26, 2009) (*Begay* and *Chambers* are not retroactive.  Courts reaching a contrary conclusion and finding that *Begay* constitutes a new substantive rule which applies retroactively include: *United States v. Leonard*, 2009 U.S. Dist. LEXIS 15957 (N.D. Okla., Feb. 27, 2009); *United States v. McElroy*, 2009 U.S. Dist. LEXIS 42059 (N.D. Okla., May 14, 2009), *George v. United States*, 2009 U.S. Dist. LEXIS 44788 (M.D. Fla., May 14, 2009), and *United States v. Blue*, 2009 U.S. Dist. LEXIS 74331 (D. Kan., Aug. 20, 2009).

sentence after the district court determined that he was an Armed Career Criminal.  Cadieux filed a § 2255 petition, arguing that his predicate ACCA offenses for (1) breaking and entering a commercial establishment and (2) indecent assault were not crimes of violence.  Regarding Cadieux's conviction for breaking and entering, the court noted that the authority cited by the defendant would not provide the relief sought because the First Circuit had clearly intended that its holding would not have retroactive effect for cases on collateral review.  *Id.* at * 2-*3 (citing *United States v. Giggey*, 551 F.3d 27, 36 n.3 (1st Cir. 2008), for the proposition that the holding in *Giggey* "affects only the procedure by which a district court calculates a defendant's sentence.[10]  It does not 'prohibit criminal punishment for certain types of primary conduct' or 'forbid the imposition of certain categories of punishment for a particular class of defendants' and so it is not a retroactive substantive change in the law."  Likewise, it is not a "'watershed' change in the law any more that *United States v. Booker* . . . which we held non-retroactive.")  The court likewise concluded that the same non-retroactivity analysis would be applicable to the defendant's conviction for indecent assault.  *Cadieux*, at *19.

    B.    *Equitable Tolling*

As Magistrate Judge Wier explained in his July 30, 2009, Order, § 2255 motions filed under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) are subject to a one-year limitations period.  As applied in the present case, the statute provides that the limitations period shall run from the last of "the date on which the right asserted was initially recognized

---

[10]    In *United States v. Giggey*, 551 F.3d 27 (1st Cir. 2008), the First Circuit held that a conviction for a non-residential burglary was not a *per se* crime of violence under § 4B1.2 of the United States Sentencing Guidelines.  Instead, the court found that this determination turns on application of a categorical approach under USSG § 4B1.2(a)(2)'s residual clause.

by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3).  Because Jones' motion appeared to be time-barred on its face, the Magistrate Judge directed the Petitioner to submit a response showing why his motion should not be dismissed.  [Record No. 36]  Jones responded the Order on August 31, 2009. [Record Nos. 37 & 38]

On November 19, 2009, Magistrate Judge Wier issued his Recommended Disposition, concluding that Jones § 2255 motion was time barred and that equitable tolling was inapplicable. In relevant part, Magistrate Judge Wier concluded that,

> [b]ased on the information in Jones's motion, as well as his supplemental filing, no adequate basis supports equitable tolling of the statute of limitations.  Movant indicates no lack of real or constructive knowledge of the filing requirement.  In fact, Jones openly admits only that he discovered the *Begay* decision "one year and two weeks" after its release.  *See* DE #35 at 12.  According to Movant, he heard about *Begay* from other inmates and only then began pursuing his Motion. *See* DE 38 at 2.  Jones had not been diligently working on a Motion or actively following changes in the law.  While Movant understandably experienced some institutional reacclimation with each move, *see id.* at 1, such time cannot equitably toll the statute of limitations, which began ticking, at best, when the Supreme Court issued the *Begay* decision and never stopped ticking during any of Movant's custodial changes.  *See* DE # 36 at 2-3 (outlining statute of limitations calculations).   Changing institutions and taking prescription medications identified certain do not constitute "extraordinary circumstances" her, where no evidence in the record indicates that either prevented Jones from pursuing his legal rights.  *See Montenegro v. United States*, 248 F.3d 585, 594 (7th Cir. 2001) (discounting "being transferred from one prison to another" as partial basis for equitable tolling), *overruled on other grounds*, *Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001); *Frazier v. Moore*, No. 2: 05-CV-1112, 2006 WL 3146436, at *8-*9 (S.D. Ohio, Oct. 31, 2006) (unpublished)( discounting medical allegations as basis for equitable tolling without proof that condition prevented assertion of rights).

[Record No. 39]  Thus, the Magistrate Judge concluded that the record does not support equitable tolling.  *Id.*

Jones filed objections to the Magistrate Judge's Recommended Disposition on December 28, 2009. In addition to again asserting that the holding in *Begay* should be applied retroactively, Jones argues that additional factors, including his illiteracy, should be considered in the Court's equitable tolling analysis. In this regard, he claims that unlike other inmates, he was forced to seek assistance from other prisoners who sometimes provided him contradictory information.[11] [Record No. 42, pp. 2-3] Combined with his various transfers by the Bureau of Prisons, Jones contends that extraordinary circumstances have been presented under *Pace v. DiGuglielmo*, 125 S.Ct. 1807 (2005). Jones also asserts that, while he believed that *Begay* might afford him relief, he lacked "real or constructive knowledge of the [one-year] filing requirement" due to his illiteracy. [Record No. 42, p. 4] Finally, Jones contends that, under the facts presented, he meets the five criteria for application of equitable tolling outlined in *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

Having reviewed the materials submitted by the Petitioner, the Court agrees with the analysis and conclusions contained in the Magistrate Judge's Recommended Disposition. Neither Jones illiteracy nor his transfers within the Bureau of Prisons supports equitable tolling. As the Sixth Circuit explained in *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002), lack of proficiency in English does not justify equitable tolling of the statute of limitations in habeas actions. "An inability to speak, write and/or understand English, in and of itself, does not automatically give a petitioner reasonable cause for failing to know about the legal requirements for filing his claim." *Id.* Thus, an inmate's lack of legal training, poor education or even

---

[11]     Jones explains that, upon reaching a new institution, an inmate must become reacclimated and work his way into the information system on the prison compound.

illiteracy does not give a court a reason to toll the applicable statute of limitations. *See Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir.), *cert. denied*, 528 U.S. 1007 (1999); *Williams v. Price*, 2002 U.S. Dist. LEXIS 6489, at \*10-\*11 (E.D. Mich. 2002).

Likewise, claimed ignorance of the law is an insufficient reason for the court to toll the one-year statutory period. *See Malone v. Oklahoma*, 100 F. App'x 795, 798 (10th Cir. 2004) (rejecting tolling based on "ignorance of the law," "the absence of law-clerk assistance," and "illiteracy"); *Price v. Jamrog*, 2003 U.S. App. LEXIS 21849, \*\*5 (6th Cir., Oct. 23, 2003) ("ignorance of the law, even for a pro se incarcerated petitioner, generally does not excuse prompt filing"). And inasmuch as an inmate does not have a right of counsel in pursuing a habeas petition, the statutory period for filing a petition should not be extended based upon a claim that a petitioner receives inconsistent or incorrect information from other inmates. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (no constitutional right to an attorney to file a collateral attack to a conviction); *Amavisca v. Scribner*, 2006 U.S. Dist. LEXIS 93198, at \*5 (E.D. Cal., Dec. 8, 2006) (collecting cases that deny equitable tolling based on role of, or filer's reliance on, "jailhouse lawyers").

The Court has also reviewed the medications taken by Jones for his various ailments [Record No. 38] and concludes that any claim of incapacitation relating to their ingestion does not support equitable tolling. There is nothing in the record to indicate that, as a result of the medications taken by Jones or their accompanying side-effects, he was unable to file a habeas petition within one year of the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008).

C.      *Jones 1999 Conviction Is A Crime Of Violence Under 18 U.S.C. § 924(e)(1).*

The statute in issue – 18 U.S.C. § 924(e)(1) – provides an enhanced penalty for a person who violates 18 U.S.C. § 922(g) and has three previous convictions for a violent felony or a serious drug offense.   It has two sections defining the term "violent felony."   Section 924(e)(2)(B) states:

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –
>
>> (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>
>> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another;

18 U.S.C. § 924(e)(2)(B).

The focus of litigation has involved the residual clause of subsection (ii) which seeks to define the type of conduct that "otherwise presents a serious potential risk of physical injury." Contrary to Jones' assertions, this case does not fall within subsection (ii) or the Supreme Court's holding in *Begay even if* that holding was applied retroactively and *even if* Jones' claim was not time barred.  Instead, his conviction constitutes a crime of violence under the primary section of the statute because it has as an element the use of force against another person.  Thus, it is not necessary to even consider whether his conviction meets the definition under the residual clause of § 924(e).

-16-

In *Begay*, the Supreme Court determined that a conviction for driving under the influence of alcohol does not constitute a violent felony because, under New Mexico law, the offense does not have as an element the use, attempted use, or threatened use of a physical force against another person.  In reaching this decision the Court addressed the residual clause of § 924(e).  That same rationale and analysis would not be applicable to Jones' 1999 conviction for reckless homicide.  Thus, while Jones' may attempt to characterize the conduct surrounding his 1999 conviction as a DUI involving bad weather and a lack of intent to harm, those issues are not relevant here.  The crime for which Jones was convicted was a crime of violence because it clearly involved as a necessary element the use of force against another person which resulted in that person's death.

## III.

The Supreme Court's decision in *Begay* should  not be applied retroactively to matters on collateral review.  Further, the Petitioner has not demonstrated that equitable tolling should be applied to his claims.  And finally, his assertion that his 1999 reckless homicide conviction is not a crime of violence under 18 U.S.C. §924(e) is incorrect.  Accordingly, it is hereby

**ORDERED** as follows:

1.    Petitioner Ricky Jones' motion to vacate his sentence filed pursuant to 28 U.S.C. § 2255 is **DENIED**.

2.    The findings and conclusions contained in United States Magistrate Judge Robert E. Wier's Recommended Disposition addressing the issue of equitable tolling [Record No. 39] are **ADOPTED** and **INCORPORATED** herein by reference.

-17-

3.     Petitioner Ricky Jones' objections [Record No. 42] to the Magistrate Judge's Recommended Disposition are **OVERRULED**.

4.     Petitioner Ricky Jones' habeas petition [Record No. 35] is **DISMISSED**, with prejudice.

This 4th day of January, 2010.

Signed By:

_**Danny C. Reeves**_   DCR

**United States District Judge**